SOLOMON H. BURHANS *et al.*

*v.*

THE VILLAGE OF NORWOOD PARK.

*Filed at Ottawa June 15, 1891.*

1. SPECIAL ASSESSMENTS—*ordinance construed.* An ordinance for a public improvement, "that said improvement shall be made and the cost thereof paid by special assessment, to be levied upon the property being benefited thereby, to the amount that the same may be legally assessed therefor, and that the remainder of the cost shall be paid by general taxation," is in accordance with the statute, and its purpose is merely to declare that the improvement shall be in part paid for by special assessment, and is not invalid.

2. SAME—*sewage—outlet on private ground.* While the fact that a proposed system of sewerage in a village has no outlet except a drain over private ground, may be a reason for enjoining proceedings to assess benefits until the right to use the ground is obtained by condemnation or otherwise, it is no reason for declaring the ordinance void.

3. SAME—*commissioners presumed to do their duty.* Section 24, article 9, chapter 24, relating to special assessments by cities and villages, relates only to the duties of commissioners appointed to make the assessments, and in the absence of proof to the contrary it will be presumed that they have obeyed its directions.

4. SAME—*waiver of jury.* Where a judgment of confirmation of a special assessment by default was set aside and leave given to file objections, the record showing the waiver of a jury and a hearing by the court, it was *held,* that the objectors could not urge for error that they were deprived of a trial by jury.

5. CONSTRUCTION—*"until the 19th" construed.* On application to confirm a special assessment, the court made an order on February 10 that objections to the confirmation should be filed by February 19. No objections being filed by the 19th, the court entered a default: *Held,* that the default was not premature. "Until the 19th" did not extend beyond the last moment of the 18th.

6. PRACTICE—*limiting witnesses.* In general it is within the discretion of the trial court to limit the number of witnesses on the different subjects involved in cases of special assessments, and like cases. But the discretion must be reasonably exercised, so as to deprive the parties of no material rights, and its abuse in this respect is reversible error.

7. SAME—*error in limiting witnesses should be urged for new trial.* If the court trying a case without a jury errs in limiting the number of

witnesses, this should be urged as one of the grounds for a new trial, otherwise it will be presumed that the ruling of the court worked no injury.

8. SAME—*setting aside default—court may impose terms.* The court, in setting aside a default as a matter of favor, may impose terms upon the defendant, and may, in its discretion, let the default stand until satisfied, from such evidence as it may deem necessary to hear, that a different judgment should be rendered. In such case the court may limit the number of witnesses it may hear, and the defendants will not have the right to a trial by jury.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. CAMERON & HUGHES, for the appellants.

Mr. JOSEPH L. McKITTRICH, and Mr. ARTHUR P. PULVER, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appeal from a judgment of the county court of Cook county, rendered on the 26th of February, 1890, confirming an assessment to pay for the estimated cost of a system of sewers in the village of Norwood Park, a suburb of the city of Chicago. The objections urged for a reversal of this judgment will be considered briefly, in the order of their presentation in the printed argument of counsel for appellants.

*First*—On the 10th of February, 1890, the court made an order that the objections to the confirmation of the assessment roll should be filed by the 19th of the month. No objections having been filed, on the morning of the 19th the court entered a default; and the contention of counsel for appellants is, that this was premature, — that appellants were entitled to the whole of the 19th to file their objections. This is inadmissible. "Until the 19th" did not extend beyond the last moment of the 18th. The objections should have been on file when the court convened on the morning of the 19th, and not having

been, there was no error in rendering a judgment by default on that morning. *Clark* v. *Ewing,* 87 Ill. 344.

*Second*—The court, however, subsequently set aside the default; but counsel for appellants insist that they were, on the hearing preceding the making of that order, deprived of the right of trial by jury. The order of the court, as shown by the abstract, is as follows:

"*Judgment order*—*February 26.*—This day come the village of Norwood Park and the objectors, both by their attorneys, and on motion of objectors' counsel it is ordered that the order of default and confirmation be set aside, and leave is given said objectors to file objections, which is done, and said cause comes on to be heard on the objections filed to the confirmation of assessment roll. By agreement a trial by jury is waived, and the cause is submitted to the court. And the court having heard the testimony and arguments, in open court, and being fully advised, finds that the property of objectors is not assessed more than it will be benefited by the improvement, nor more or less than its proportionate share of the cost. It is ordered that all objections heretofore filed be overruled."

This seems to be a complete answer to the objection of counsel. If appellants agreed to waive a jury, the court did not err in omitting to have a jury called. But since the court was not obliged to set aside the default, it might, in doing so, as a matter of favor, impose what terms it pleased, and it was hence within its discretion to let the default stand until satisfied, from such evidence as it deemed necessary to hear, that a different judgment should be rendered,—and from the recitals of the bill of exceptions this, in effect, is what was done.

*Third*—It is contended that the ordinance under which the system of sewers is constructed is void, because it fails to provide an outlet. The record does not sustain this contention. James C. Elston testified: "I am a civil engineer, and acquainted and familiar with this neighborhood. I designed the sewers for about sixty acres. The system, when properly

extended, is adequate for house drainage and territory drainage,—ample. * * * I have provided an outlet to the north branch of the Chicago river, three-quarters of a mile,— a good ditch, with a fall of twenty-two feet in three-fourths of a mile." There was also read in evidence an order of the president and board of trustees of the village, providing for the cleaning and deepening of this ditch, to be paid for out of the general fund of the village. It is true that appellant's witness, T. J. Foster, testified that this ditch, in part, runs over private property; but while that might be a reason for enjoining proceedings until the right to use the ground over which the ditch passes is obtained, by condemnation or otherwise, it is no reason for declaring the ordinance void. *Hunerberg* v. *Village of Hyde Park,* 130 Ill. 156; *Leman* v. *City of Lake View,* 131 id. 388.

*Fourth*—The second section of the ordinance reads as follows:

"Sec. 2. That said improvement shall be made and the cost thereof be paid by special assessment, to be levied upon the property being benefited thereby, to the amount that the same may be legally assessed therefor, and that the remainder of the cost shall be paid by general taxation."

It is contended that this section is illegal, in that it does not follow the statute, (sec. 140, art. 9, chap. 24, 1 Starr & Curtis, p. 494,) and require that the assessment made by the commissioners shall be such that each tract shall be assessed of the whole cost in the proportion in which they will be severally benefited. But that section relates only to the duties of commissioners, (*Ricketts* v. *Hyde Park,* 85 Ill. 110,) and we must presume that they have obeyed it, unless it is made to appear that they have not. This section of the ordinance is pursuant to section 135 of the same article, and the purpose of the section is merely to declare that the improvement shall be, in part, paid for by special assessment,—and in that it is a sufficient compliance with the statute.

*Fifth*—On the questions of fact we are unable to say that the court erred in its findings. The evidence was conflicting, but there was evidence, which we can not say was overcome by countervailing evidence, sustaining the finding of the court.

*Sixth*—The following ruling of the court is objected to as having seriously prejudiced the rights of appellant:

"The Court: Let the record show that yesterday it was agreed that each owner should be called to prove as to his own property, only. The court will now permit evidence to be given, by not more than four witnesses, as to any one piece of property, on each side of the case. The objectors are allowed to prove the effect of the improvement on each specific piece of property, by not more than five witnesses on each piece of property, on each side of the case. (Exception by Mr. Hughes.)

"Mr. Hughes: I also object to the statement of the court that it was agreed yesterday that no witness should be called except for his own property.

"The Court: Let the record show that not more than five witnesses will be allowed to testify as to the general topography of the country on which the improvement is to be made." (Exception by Mr. Hughes.)

The bill of exceptions preceding the recital of the evidence is as follows:

"Be it remembered, that on the 19th day of February, 1891, the assessment made by the commissioners was confirmed by the court, as shown by the record, and at the same session of the court, Wm. E. Hughes, of counsel, moved the court to set aside the order of confirmation as to the parties whose names are signed to the objection presented by Cameron & Hughes, of counsel. The court directed the counsel to prepare affidavits and give notice to the counsel for petitioner, and on February 21, the objectors' motion coming on to be heard, they presented their written objections, with their names signed thereto, by Cameron & Hughes, of counsel, and also

the affidavits above abstracted. On the hearing of such motion the court refused to set aside the several defaults as to said objectors, to which ruling they, by their counsel, excepted. The court then announced that he would hear testimony from the objectors as to the defenses on the merits, and if, on such hearing, the judge was satisfied with the merits of the defense, he would set aside the default, and directed such hearing should commence on February 24, following; that on Monday, the 24th, the objectors and their counsel attended court with their witnesses, and the case not being reached, the court ordered the taking of the evidence should commence Tuesday, February 25, whereupon the following evidence was heard:" And after reciting the evidence, it concludes thus: "And thereupon the court set aside the order of confirmation as to each and every one of said objectors, and made a finding in this case upon the objections filed by objectors, against them and each of them, to which finding of the court the objectors, by their counsel, then and there in open court excepted. Thereupon the objectors, by their counsel, moved the court to set aside the said finding and to grant them a new trial upon the merits, because the said finding was not warranted by the evidence adduced on the hearing, and because, upon the evidence, the finding of the court should be in favor of the defendants, the objectors,—which motion was overruled, to which ruling of the court the objectors, by their counsel, then and there in open court excepted, and the court thereupon entered judgment in favor of the petitioners and against the said objectors, and each of them, as shown by the assessment roll filed, to which ruling of the court the objectors, by their counsel, then and there in open court excepted."

In general, it is held to be within the discretion of the trial court to limit the number of witnesses on the different questions involved in cases like the present. (Lewis on Eminent Domain, sec. 434, and authorities there cited.) But the discretion must be reasonably exercised, so as to deprive the

parties of no material rights, and an abuse of it in this respect will be reversible error. (*Green* v. *Phœnix Mutual Life Ins. Co.* 134 Ill. 310.) But this has reference only to cases being heard as of right, and not to examinations by the court as a mere matter of favor, to ascertain, as in this instance, whether, in the opinion of the court, a judgment already properly entered executes justice. In such cases, since the party has no right to the hearing, the court, in allowing it, may impose conditions in the discretion of the judge, and the party may then either avail of the privilege of the hearing, as offered, or allow the judgment to stand as it is.

But, aside from this, concede that the court abused its discretion in thus limiting the number of witnesses, an opportunity should have been given it to correct this error. But it does not appear that this was done. It will be observed that this objection is not assigned as one of the reasons urged upon the court to induce the judge to set aside his findings, and that the reasons urged upon the court for that purpose imply that no injury had been done the objectors in limiting the number of witnesses. This objection, therefore, is also overruled.

We find no error in the record for which, in our opinion, the judgment should be reversed. It must therefore be affirmed.

*Judgment affirmed.*