[No. 6119. Decided June 29, 1906.]

ESTATE OF AMOS BROWN, INC., *Respondent,* v. THE CITY OF WEST SEATTLE *et al., Appellants.*[1]

NEWSPAPERS—MUNICIPAL ELECTIONS—PUBLICATION OF NOTICE. Under Bal. Code, § 708, requiring notice of an election for the annexation of territory to a municipal corporation to be published in a newspaper printed and published in such corporation, an election in the town of W. S. is valid when the notice was published in the W. S. Observer, which was generally circulated in the town and had been designated as the official paper of such town, although the mechanical work of printing the paper was done in the city of S., the town of W. S. having no newspaper actually printed within its limits.

MUNICIPAL CORPORATIONS—ELECTIONS HELD IN DEFIANCE OF ORDER OF COURT—VALIDITY—BURDEN OF PROOF. A town election held in defiance of an order of court, an account of which order was published in a daily paper of general circulation in such town on the morning of the election, is void; the burden of proof being upon defendants to show that the election was a fair and correct expression of the voters, and it appearing that only about one-fifth of the registered electors had voted.

Appeal from a judgment of the superior court for King county, Griffin, J., entered March 9, 1906, upon findings in favor of the plaintiff, after a trial on the merits, adjudging null and void a municipal election annexing property, and enjoining the city from dealing with said property as a part of its territory. Affirmed.

*E. F. Kienstra (Richard Saxe Jones,* of counsel), for appellants.

*McCafferty & Bell,* for respondent.

1Reported in 85 Pac. 854.

Root, J.—This action was instituted by respondent to secure a permanent injunction enjoining the city of West Seattle and the other appellants, who were its officers, from holding an election on the 22d day of April, 1905, for the purpose of determining whether certain property, including property of respondent, should be annexed to said city. On the day before said election was to be held, the superior court of King county made and entered an order restraining appellants from holding said election or taking any further proceedings looking toward the annexation of said territory under or by virtue of the notice calling for said election. Said restraining order was personally served upon the officers of said city on the 21st day of April, 1905. The fact of the issuing and serving of said restraining order was published, on the morning of April 22, in the Post-Intelligencer, a daily paper of Seattle, which had a general circulation in the city of West Seattle.

Notwithstanding the making and service of said restraining order, the city officers of West Seattle proceeded with said election, and thereafter certified that said election had been carried by the requisite number of votes in favor of annexation, and thereafter treated said property as within the corporate limits of said city. The city officers were summoned before the court as for contempt in violating the order of the court forbidding said election, and were found guilty and punished. When the case came on for trial the court made findings of fact and conclusions of law, and entered judgment thereupon wherein and whereby it was found, adjudged, and decreed that said election was null and void, and said city and its officers were perpetually enjoined from dealing with the property of respondent as a part of the territory of said city. From this judgment and decree an appeal is prosecuted to this court.

The trial court based its decree upon two grounds: First, that the notice of the special election was not given as required by the statute; second, that the election, having been held in defiance of the order of the court, was illegal.

The statute requires the notice of an election of this character to be given,

"by publication in a newspaper printed and published in such corporation, and also in a newspaper printed and published outside of such corporation, and in the county in which such territory so proposed to be annexed is situated, in both cases for a period of four weeks prior to such election." Bal. Code, § 708 (P. C. § 3381).

At the time in question there was no newspaper having the mechanical work of printing done in the said city of West Seattle; but there was a newspaper known as the "West Seattle Observer," which had theretofore been regularly designated as the official newspaper of said city. The mechanical work of printing this newspaper was done in the city of Seattle, but the newspaper itself was circulated generally in the city of West Seattle and was devoted to items of news and matters of interest appertaining to the people and affairs of the last named city. Notice of the election was published in this newspaper and, also, posted in several places in the city, and in the territory sought to be annexed. We think that this newspaper may properly be said to have been "published" within the city of West Seattle; and under the circumstances of this case, we think there was a sufficient compliance with the statute. To hold otherwise would be to absolutely prevent any election of this kind being held for the reason that there was no newspaper actually "printed" within the limits of said city. The purpose of the statute was to furnish the voters with adequate notice of the election, and when this was accomplished and in a manner as nearly as possible in accordance with the literal terms of the statute, as was done in this case, we think it constitutes a sufficient compliance with the statutory requirement. Seymour v. Tacoma, 6 Wash. 427, 33 Pac. 1059; State ex rel. Mullen v. Doherty, 16 Wash. 382, 47 Pac. 958, 58 Am. St. 39; State v. Russell (34 Neb. 116), 33 Am. St. 625 and note.

Upon the other ground, we think the judgment of the trial

court must be sustained. This election was held contrary to, and in open defiance of, an order of a court having general jurisdiction over the persons and subject-matter involved. The questions of the propriety or legality of the court's order, made so short a time before the election, is not involved at this time. The question is, did the making, issuing, and service of this restraining order and the publishing of these facts have a tendency to prevent a full, free, and fair expression of the voters at the election, and was the result probably affected by these matters? The natural and legitimate consequences of the making and service of such an order would be to deter voters from participating in an election thus prohibited. The trial court found that, by reason of the issuance and service of said restraining order and of the publication of that fact in the newspaper, many qualified voters may have been deterred from participating in the election, and that the same was not fair and legal. Appellants contend that this finding is insufficient to support the court's action, but that there should have been proof and a finding to the effect that qualified voters were actually prevented from participating in the election. We do not think this contention can be upheld. It having been shown that the election was held contrary to, and in defiance of, the order of the court, we think the burden of showing that said election was fair and a correct expression of the voters, rested upon appellants.

It appears that at a special election held a few months prior to the one involved here there were cast in the city a few less votes than were given at this election, and it is urged by appellants that this tends to show that the later election was a fair and full expression of the people. It also appears, however, that there were registered in said city five times as many voters as participated in the election here in question, and that at the last general election in said city there were cast four times as many votes. Public policy requires that all elections should be held under circumstances that will

permit and encourage a full, free, and fair expression of those entitled to vote; and whenever there is shown to have existed circumstances and conditions well calculated to, and which probably did, repress, hinder, and defeat such an expression, the result obtained should not be binding. Under the circumstances revealed by the record in this case, we do not think the result of the election in question can be said to constitute a fair and free expression of the voters of West Seattle and the territory sought to be annexed. The trial court was justified in holding said election null and void.

The judgment is therefore affirmed.

MOUNT, C. J., CROW, RUDKIN, HADLEY, and DUNBAR, JJ., concur.